UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT A. BAKER,

                                        Plaintiff,

                    v.                                        6:04-CV-153
                                                             (J. Kahn)

COMMISSIONER OF SOCIAL
SECURITY,

                                        Defendant.
_____

APPEARANCES:                            OF COUNSEL:

LIVINGSTON L. HATCH, ESQ.
Attorney for Plaintiff

GLENN T. SUDDABY                        WILLIAM H. PEASE
United States Attorney for the          Assistant U.S. Attorney
 Northern District of New York
Attorney for Defendant

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable

Lawrence E. Kahn, United States District Judge,  pursuant to 28 U.S.C. § 636(b) and

Local Rule 72.3(d).  This case has proceeded in accordance with General Order 18.

## PROCEDURAL HISTORY

Plaintiff filed applications for both Title II Social Security benefits and

Supplemental Security benefits on September 20, 2001 (Administrative Transcript

("T") at 54-56, 161-64).  The applications were denied initially and upon reconsideration.  (T. 27, 31, 159, 160).

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on May 7, 2003.  (T. 177, 180).  The ALJ found that the plaintiff was not disabled.  (T. 13-22).  The ALJ's decision became the final decision of the Commissioner  when the Appeals Council denied plaintiff's request for review on October 3, 2003.  (T. 5-8).

## CONTENTIONS

The plaintiff makes the following claims:

(1) The ALJ erred in concluding that plaintiff had the residual functional capacity to perform light work.  (Brief, p. 6).

(2) The ALJ violated the Treating Physician Rule in rejecting the opinions of treating medical providers.  (Brief, p. 13).

(3) The ALJ erred in rejecting plaintiff's credibility.  (Brief, p. 17).

The defendant argues that the Commissioner's determination is supported by substantial evidence in the record and must be affirmed.

## FACTS

Plaintiff was born on February 5, 1961 and has a 12th grade education. (T. 183, 186).   Plaintiff began work as a corrections officer with the New York State Department of Corrections during his early 20's. (T. 183).  According to plaintiff, his

lower back problems began when he was attempting to intervene between inmates who were fighting in the mess hall at the correctional facility. (T. 183-84).  This incident apparently occurred during 1983.[1] (T. 184).  In a medical history taken by Dr. S. Patel at the Champlain Valley Physicians Hospital Medical Center (hereinafter Champlain Valley Hospital), plaintiff reported that his back problems began during 1981 when he "... hurt his lower back lifting at work...."  (T. 111).  Plaintiff also told Dr. Patel that in 1983, plaintiff slipped on a piece of food while running at the correctional facility. (T. 111).  There is no mention of an inmate altercation in Dr. Patel's report.

Plaintiff testified that after the incident when plaintiff stopped the fight in the mess hall, plaintiff was out of work on Workers' Compensation for several weeks.  (T. 184).  However, he stated that he did return to work, and continued to work for three years after the incident. (T. 184).  According to plaintiff, he was prescribed a back brace which he utilized "most of the time even at work". (T. 184).  Plaintiff testified that he experienced exacerbations of his lower back pain and was out of work for short periods. (T. 184).

According to Dr. Patel's report of May 19, 1986, plaintiff told the doctor that after the incident in which he slipped on food at the correctional facility in 1983, he

---

[1] During the ALJ hearing, in this case, plaintiff stated that he continued to work for three years after the incident. (T. 184).  Since plaintiff also testified that he stopped working in 1986, it appears that the incident involving the inmate altercation occurred in 1983. (T. 185).

was out of work for "about 10 days", and then plaintiff continued to have pain intermittently. (T. 111). Plaintiff also told Dr. Patel that in approximately 1984, plaintiff had a severe episode of pain, for which he was out of work for another 10 days. However, in the year prior to Dr. Patel's examination in 1986, the plaintiff did not have any significant back pain or sciatica. *Id.*

Plaintiff told Dr. Patel that in late April or early May of 1986, plaintiff developed severe pain in his lower back while fishing, went to the Emergency Room and was prescribed bed rest for about two weeks by Dr. Parikh. (T. 111). Plaintiff told Dr. Patel that after the two weeks, his pain persisted, and that he was examined by Dr. Azar. (T. 111). Plaintiff stayed on bed rest for another four days, and in the three and one half to four weeks prior to Dr. Patel's May 1986 examination, plaintiff stated that he had been "taking it easy." *Id.* Dr. Patel stated that plaintiff told him that four days prior to Dr. Patel's examination, "for no apparent reason" plaintiff developed excruciating pain in the lower back, going down into the right lower extremity, going down into the knee. *Id.*

According to plaintiff, he did not return to work after the onset of back pain while he was fishing, and plaintiff testified that he was "declared unfit to continue work" by his employer's physician. (T. 185). Plaintiff received Workers' Compensation payments for "many years" and then took a lump sum payment. (T. 185).

Although plaintiff stated during his hearing that he had not applied for work "in recent years", the ALJ noted at the hearing that the record shows that he did work in Connecticut during the year 2000 and earned $1,500.00. (T. 187). The record also indicates some work as a laborer during 1989 and 1990, and as a press operator during 1989. (T. 71). Plaintiff admitted that he had attempted to work, but according to plaintiff, he was not able to continue in these jobs because of his back impairment. (T. 187).

Plaintiff testified that he had not seen his family doctor for 2 or 3 years and did not visit specialist physicians since he does not want to stay on "drugs and stuff like that". (T. 186). Plaintiff stated that his backache is always there, and that when his back goes out he has extreme pain which "takes [his] breath away". (T. 186). Plaintiff stated that his wife was the primary source of income, although she was not working at the time of the hearing in May of 2003. (T. 188). Plaintiff has five children, four of which live at home. (T. 187).

Plaintiff testified that he does not do very much during the day because of his pain and is not able to stand long enough to complete washing dishes. (T. 188). Plaintiff is unable to hunt or fish, except that he is able to fish in "accessible" places. (T. 190, 191). Plaintiff's wife testified that plaintiff was unable to maintain any jobs. (T. 191). Plaintiff's wife stated that the family moved to Connecticut for a brief time, and plaintiff was briefly employed at several jobs. *Id.* Plaintiff's wife stated that she

and their children do all the outside work, and plaintiff cannot do vacuuming or sweeping, but is able to do some minimal household chores such as putting clothing into the washing machine. (T. 191).

## 1. **Medical Evidence**

The medical evidence in the record is sparse. Plaintiff has applied for both Social Security Disability Insurance benefits as well as Supplemental Security Income. Since plaintiff only met the insured requirements for Social Security Disability Insurance only through September 30, 1992, (T. 14, 25), his disability would have had to begin prior to that date. For Supplemental Security Income, there is no insured date by which the plaintiff would have to show onset of disability. Plaintiff is claiming for purposes of both types of benefits that his disability onset was April 1, 1986. (T. 161).

### A. **Medical Evidence Prior to 1992**

The record shows that Dr. Jerome Davis was a treating physician who examined plaintiff on January 30, 1987 when plaintiff was admitted to Champlain Valley Hospital for a possible herniated disc. (T. 106). Dr. Davis reviewed the results of a lumbar myelogram which showed no evidence of herniation, but did show minor spondylolisthesis associated with mild scoliosis. (T. 106). Dr. Davis recommended that plaintiff continue his physical therapy, advised plaintiff to wear a back brace, and determined that plaintiff should return to work "as soon as possible". (T. 106).

Dr. Jerome Davis completed reports for Worker's Compensation. (T. 114-16). There are three reports, one dated February 9, 1987, (T. 115), one dated February 23, 1987, (T. 114), and the last report dated April 8, 1987, (T. 116). The reports indicate that plaintiff's diagnosis was "low back syndrome, spondylolisthesis". (T. 114, 115). The February 23, 1987 report stated that the plaintiff's "condition and neurological evaluation" was showing clinical improvement. (T. 114). The April 8, 1987 report states that plaintiff would be re-evaluated in one month, and at that time, he would be advised to return to work if his condition remained improved. (T. 116).

Plaintiff was also treated by Dr. Soham Patel during his stay at Champlain Valley Hospital between May 30 and June 6, 1986. (T. 110-12). Dr. Patel's final diagnosis was acute right sciatica. (T. 110). Dr. Patel's report from that hospitalization states that a CT scan showed evidence of a bulging disc at the L5-S1 level and mild spondylolisthesis of L5 in relationship to S1. Dr. Patel stated that plaintiff's clinical examination revealed no motor or sensory deficits, that the straight leg raising was 85 degrees on one side and 90 degrees on the other side, and that the Lesague test was negative bilaterally. (T. 110). Prior to this admission, Dr. Patel reported that plaintiff stated he had not had any significant back pain or sciatica for approximately one year. (T. 111).

Dr. Stephen P. Nicknish is an orthopedic surgeon who examined and treated plaintiff during February and July of 1987. During July of 1987, Dr. Nicknish

examined plaintiff for the specific purpose of reporting to the State Insurance Fund in connection with plaintiff's Workers' Compensation claims.  Dr. Nicknish's examination in July showed a positive straight leg raising test on the right at 60 degrees, causing low back and buttock pain.  Plaintiff's reflexes were present in his knees and ankles, and plaintiff's motor exam was normal.  Plaintiff's sensory exam showed some diminution of pinprick in the right calf. (T. 119).

Dr. Nicknish then gave his opinion "that the patient remains totally disabled from his symptomatic spondylolisthesis." (T. 119).  However, Dr. Nicknish stated in his report that he strongly recommended that the plaintiff be evaluated by Dr. John Frymoyer since "***I think he has a remedial condition***" *Id.* (emphasis added).

Dr. John Frymoyer examined plaintiff on a consultative basis on May 3, 1989. (T. 117).  Dr. Frymoyer found that plaintiff is somewhat overweight and "guards his back mobility" to 45 degrees of flexion and 10 degrees of extension which produce pain. (T. 117).  Dr. Frymoyer found that plaintiff's lateral bending and rotation were reduced approximately 15 % and that the straight leg raising test caused back pain at only 70 degrees.  Dr. Frymoyer found no clear cut sensory or motor deficits, although he thought there might have been some minor L5 deficit on plaintiff's right side. (T. 117-18).

Dr. Frymoyer reviewed a CT scan and x-rays which showed spondylolisthesis at L5 "which is ***minimally*** forward displaced". (T. 118)(emphasis added).  Dr. Frymoyer

would not recommend spinal fusion for plaintiff because of his occupationally related low back pain in association with spondylolisthesis. Dr. Frymoyer believed that surgical intervention was inappropriate for a patient with plaintiff's type of injury and physical condition. (T. 118). Dr. Frymoyer expressed no opinion about plaintiff's ability to work, whether plaintiff's condition would continue, or whether alternate courses of action were open to the plaintiff.

There appear to be no medical records for any impairment between 1989 and 1992. During June of 1992, plaintiff sought treatment at the Ausable Valley Health Center ("Health Center") for a painful *foot condition* which turned out to be caused by gout. Plaintiff returned to the Health Center for follow-up treatment of his gout condition and these will be discussed below in the next section.

### B.  Medical Evidence After September 30, 1992

Plaintiff returned to the Health Center for follow-up treatment of his gout condition in March, 1996 (T. 132); June, 1997 (T. 130); February, 1998 (T. 131); April, 1998 (T. 128-29); and August, 1998 (T. 126). Plaintiff visited the Health Center on August 3, 1998, when plaintiff was again complaining of his *gouty arthritis*. The Physicians Assistant's Note states that plaintiff was in "no obvious distress" except for exquisite tenderness over a part of plaintiff's foot. (T. 126).

It was not until June of *1999*, that plaintiff complained of acute low back pain, and a Physician's Assistant at the Health Center recommended rest, the application of

heat, and prescribed the drug Vicodin. (T. 125).  The Physicians Assistant's Note states that if plaintiff did not have significant improvement, physical therapy would be recommended.  The record does not indicate whether plaintiff received any physical therapy at that time.

Almost one year later in late May of 2000, plaintiff again sought medical care for his gouty arthritis in his left foot.  (T. 124).  There is no indication that plaintiff was complaining of any back problems at that time.  (T. 124).  On August 24, 2000, plaintiff again visited the Health Center for low back pain and requested the Physician's Assistant to write a prescription for a new back brace.  No treatment was given on that date. (T. 122).

More than one year later on November 16, 2001, plaintiff was examined by consultant Dr. David Welch. (T. 134-35).  Dr. Welch stated that plaintiff had a stiff gait pattern and was slow and methodical getting up and down from a chair.  Plaintiff was able to walk on his toes and heels and once he was moving could walk with a fairly brisk gait, but held his back very rigidly and allowed little movement. Plaintiff's forward flexion was limited and his straight leg raising was approximately 70 degrees on each side.

Plaintiff's ankle jerks were slightly reduced but present and equal bilaterally. (T. 134).  Dorsi-flexion in plaintiff's feet caused no pain suggesting no radiculopathy. There was no atrophy and no sensory loss in plaintiff's lower extremities.  The range

of motion, strength, and reflex activity in plaintiff's upper body were normal. (T. 134).
Dr. Welch concluded that plaintiff could perform some very light duty with a brace
but would be limited with respect to bending and twisting.

Dr. Welch believed there was a chance that a spinal fusion could enable
plaintiff to return to light or moderate activity, but he would still have some limitation
on lifting, pushing and pulling. (T. 135).  Dr. Welch based his opinion on the
expectation that x-rays of plaintiff's lumbar spine would show a Grade 1 or Grade 2
spondylolisthesis at either L5-S1 or L4-5.  Two weeks later, on November 30, 2001,
x-rays of plaintiff's lumbar spine did ***not show any*** spondylolisthesis. (T. 137). The
radiologist found degenerative disc disease at each disc level with some disc space
narrowing and sclerosis at L5-S1.  The radiologist stated that he "suspected"
spondylosis at L5, but requested additional x-rays to further evaluate that suspicion.
(T. 137).

Approximately two weeks later on December 13, 2001, the Social Security
Administration prepared Residual Functional Capacity (RFC) Assessments for the
plaintiff.  (T. 138-145, 146-153).  In each case, the analyst found that plaintiff could
lift 10 pounds frequently, 20 pounds occasionally, and could stand and sit for
approximately 6 hours.  The analyst cited to the opinions of Drs. Frymoyer, Nicknish,
and Welch as the bases for the RFC evaluations. (T. 139, 144, 147, 152).

11

## DISCUSSION

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [he] lives, or whether a specific job vacancy exists for [him], or whether [he] would be hired if [he] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; ... .  Assuming the claimant does not have listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir. 1984).

## 1.   Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).   A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)(citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

## 2.    **Residual Functional Capacity (RFC)**

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545; 416.945. *See also Martona v. Apfel*, 70 F. Supp. 2d 145 (N.D.N.Y. 1999)(citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *LaPorta v. Bowen*, 737 F. Supp. at 183.   Furthermore, an ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Verginio v. Apfel*, 1998 WL 743706 (N.D.N.Y. Oct. 23, 1998); *LaPorta v. Bowen*, 737 F. Supp. at 183.

The ALJ found that plaintiff had the residual functional capacity to perform light work.  Plaintiff argues that plaintiff's non-exertional limitation of pain would

substantially reduce the range of work that plaintiff can perform and that plaintiff's severe and chronic pain limits his range of motion. (Brief, pp. 9, 10).  Plaintiff further argues that his spondylolisthesis is objective evidence supporting his complaints of pain and decreased range of motion. (Brief, pp. 10, 11).

The court would first point out that while an ALJ must consider the data provided by a physician as to the nature and severity of plaintiff's impairments, the "legal" determination of plaintiff's RFC is reserved to the Commissioner. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); 20 C.F.R. §§ 404.1527(d)(2), (e)(2); 416.927(d)(2), (e)(2).  In this case, in determining that plaintiff had the RFC to perform light work, the ALJ found that plaintiff's complaint of continuous and daily low back pain was not credible, (T. 18-19), and this court's review finds substantial evidence to support the ALJ's RFC finding as well as his credibility finding discussed below.

The ALJ reviewed the medical record in detail and supported his conclusion about residual functional capacity by citing specific evidence in the record. (T. 17-19). The ALJ pointed to the lengthy gaps in the plaintiff's medical treatment; the fact that plaintiff had not seen an orthopedic surgeon since 1996; and the objective evidence in a CT scan, x-rays and a myelogram. (T. 17).  The ALJ noted that there was a gap of *10 years* between May, 1989 and June, 1999 during which the plaintiff *did not receive any treatment for his back*. (T. 18).  The ALJ also pointed to plaintiff's use of only

over-the-counter medications on an occasional basis and plaintiff's numerous visits to

the Health Center in 1992, 1996, 1997, 1998 (three times), when plaintiff **did not**

**complain of any back pain** or request any type of pain medication or physical therapy

for his back.  The ALJ also reviewed the medical examinations where plaintiff had no

evidence of reflex, motor or sensory loss, and no indication of muscle atrophy.  The

ALJ's finding is supported by substantial evidence in the record.

    None of the physicians of record evaluated plaintiff's RFC in terms of

specifying what work functions plaintiff could perform.  The court notes that the

physicians generally were reviewing plaintiff's case for purposes of Worker's

Compensation.  However, the ALJ did have two opinions (one for Disability Insurance

Benefits and one for SSI Benefits) from a Disability Analyst.  The Disability Analyst

found that plaintiff had the RFC to perform light work, basing her opinion on the

**plaintiff's doctor's** reports. (T. 139, 143, 144)(SSI)(T. 147, 151, 152)(DIB).  This

opinion is supported by the medical evidence in the record.

    Although pain can be classified as a "non-exertional" impairment, unless that

non-exertional impairment significantly limits the range of work that plaintiff can

perform, the Commissioner may still utilize the Medical Vocational Guidelines to

determine that plaintiff is not disabled. *See Rosario v. Chater*, 95 Civ. 10509, 1997

U.S. Dist. LEXIS 4448, *12-13 (S.D.N.Y. April 8, 1997).  When the ALJ properly

determines that the extent of the pain alleged by plaintiff is not credible, he may still

use the medical vocational guidelines. *Id.*  As further analyzed below, the ALJ

properly rejected plaintiff's complaints of disabling pain.

## 3.   **Treating Physician**

The medical conclusions of a treating physician are controlling if well-

supported by medically acceptable clinical and laboratory diagnostic techniques and

are not inconsistent with the other substantial evidence in the record.  20 C.F.R. §§

404.1527(d)(2); 416.927(d)(2).  *See also Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir.

1998); *Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999).  An ALJ may not

arbitrarily substitute his own judgment for competent medical opinion.  *Rosa v.

Callahan*, 168 F.3d at 79 (citations omitted).   If the treating physician's opinion is not

given "controlling weight," the ALJ must assess the following factors to determine

how much weight to afford the opinion: the length of the treatment relationship, the

frequency of examination by the treating physician for the condition(s) in question, the

medical evidence supporting the opinion, the consistency of the opinion with the

record as a whole, the qualifications of the treating physician, and other factors

tending to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2-6);

416.927(d)(2-6).  Failure to follow this standard is a failure to apply the proper legal

standard and is grounds for reversal. *Barnett v. Apfel*, 13 F. Supp. 2d 312, 316

(N.D.N.Y. 1998) (citing *Johnson v. Bowen*, 817 F.2d at 985).

In this case, plaintiff argues that his treating physician, Dr. Stephen Nicknish, found that plaintiff was totally disabled.   First, the record shows that Dr. Nicknish treated plaintiff on only **two** occasions, early February of 1987 and during July of 1987.  (T. 119).  The July 6, 1987 examination by Dr. Nicknish was **specifically done for the State Insurance Fund in connection with plaintiff's Workers' Compensation.**  Dr. Nicknish's opinion rendered in regard to plaintiff's Workers' Compensation involves a different standard of review. *See Gray v. Chater*, 903 F. Supp. 293, 301 n.8 (N.D.N.Y. 1995)(Worker's Compensation determination is directed at the applicant's prior employment and measures the ability to perform that employment, rather than whether plaintiff can perform other substantial gainful activity in the national economy as in the Social Security Act).

There is no dispute that during July of 1987, plaintiff was unable to continue **his work as a corrections officer**, so that Dr. Nicknish's opinion about plaintiff's total disability refers to plaintiff's work **as a corrections officer.**  Nevertheless, it is clear from the record that Dr. Nicknish specifically stated that in his opinion, plaintiff has "**a remedial condition**" (T. 119)(emphasis added).

The ALJ did not give controlling weight to Dr. Nicknish's opinion and the ALJ's analysis and finding are supported by substantial evidence in the record.  The ALJ reviewed the results of consulting examinations by Dr. Frymoyer and Dr. Welch. Dr. Frymoyer's examination was in 1989 and did not conclude that plaintiff was

totally disabled from any type of work.  Dr. Welch's examination in 2001 is clearly

well after plaintiff's insured date and the ALJ noted that this opinion was based on the

assumption that plaintiff had a Grade 1 or Grade 2 spondylolisthesis, which was ***not***

shown on x-rays in November of 2001.

**4.**   **Pain and Credibility**

"An [ALJ] may properly reject [subjective complaints] after weighing the

objective medical evidence in the record, the claimant's demeanor, and other indicia of

credibility, but must set forth his or her reasons 'with sufficient specificity to enable us

to decide whether the determination is supported by substantial evidence.'" *Lewis v.*

*Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)(quoting *Gallardo v. Apfel*, No. 96

CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)).  To satisfy the

substantial evidence rule, the ALJ's credibility assessment must be based on a two

step analysis of pertinent evidence in the record.  *See* 20 C.F.R. §§ 404.1529, 416.929;

*see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y.

March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical

evidence, whether the medical impairments "could reasonably be expected to produce

the pain or other symptoms alleged...."  20 C.F.R. §§ 404.1529(a), 416.929(a).

Second, if the medical evidence alone establishes the existence of such impairments,

then the ALJ need only evaluate the intensity, persistence, and limiting effects of a

claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. *Id.* §§ 404.1529(c), 416.929(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.* §§ 404.1529(c)(3), 416.929(c)(3).

Plaintiff argues that the ALJ's finding of credibility is not supported by substantial evidence in the record. As stated above, this court finds that the ALJ's findings and conclusions about plaintiff's credibility, and therefore his RFC, are fully supported by substantial evidence in the record.

The record shows that plaintiff sought minimal medical assistance for his back condition and was unwilling to pursue physical therapy or utilize stronger medications than simple over-the-counter drugs. The period of ***ten years*** for which plaintiff sought ***no medical care*** raises serious questions about plaintiff's credibility. While plaintiff

might argue that he could not afford treatment or he did not wish to take strong medications, the court notes that when plaintiff did seek treatment for his gouty arthritis at the Health Center during 1992, 1996, 1997, and 1998, plaintiff did *not* complain of back problems, and the notes from those visits do not suggest that plaintiff had difficulty walking, standing, or sitting. (T. 122-133).  The ALJ also pointed to some of plaintiff's activities which although are not extensive, must be examined with regard to plaintiff's ability to drive, ability to go fishing, and ability to do other activities of daily life.  Thus, the Commissioner's decision is supported by substantial evidence.

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED,** that the decision of the Commissioner be **AFFIRMED** and the Complaint (Dkt. No. 1) be **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: August 30, 2005

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge